UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Plaintiff, |
| v. | Criminal Action No. 3:19-cr-14-RGJ |
| TAJUAN M. MCDOWELL, | Defendant. |

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Michael Smithers ("Smithers") moves to intervene in this matter "for the limited purpose of seeking to unseal the sentencing order [RE 185], the statement of reason [RE 189], and the plea agreement supplement [RE 190] [from Tajuan McDowell's ("McDowell") case]." [DE 336 at 1761]. The United States has not responded, and the time to do so has lapsed. LCrR 47.1(d) ("Unless otherwise ordered by the Court, a party opposing a motion must file a response within 14 days of service of the motion."). Accordingly, this matter is ripe for adjudication. For the reasons below, the motion is **DENIED**.

**I.    Background**

In this matter, McDowell pleaded guilty to conspiracy to possess with intent to distribute a controlled substance under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. [DE 184 at 815; DE 188 at 837]. Pursuant to the Western District of Kentucky's General Order 2010-06 ("the General Order"), the plea supplement was filed under seal.[1] [DE 190]. Following McDowell's sentencing 88], the statement of reason was also filed under seal. [DE 189]. Now, Smithers seeks to intervene

---

[1] United States District Court Western District of Kentucky, General Order 2010-06, https://www.kywd.uscourts.gov/general-orders-2010 (last visited Sept. 6, 2023). The General Order states that "[a]ll plea agreements will be accompanied by a sealed document entitled 'plea supplement,'" "the plea supplement will contain either a cooperation agreement or a statement that no such agreement exists," and "the Clerk is **DIRECTED** to **SEAL** the plea supplement." *Id.*

and unseal these documents because McDowell is a witness in *Commonwealth v. Smithers*, 19-CR-3355 (Jefferson Cir. Ct.), where Smithers is criminally charged in connection with the murder of Chatariona Harrison ("Harrison"). [DE 336 at 1762].

Smithers claims that McDowell, a witness for the prosecution in *Commonwealth v. Smithers*, was "in a relationship" with Harrison. [*Id.*]. Harrison was killed in a drive-by shooting, and McDowell was purportedly in the vehicle with Harrison before the shooting occurred. [*Id.*]. Smithers claims that McDowell has made inconsistent statements about whether he saw the perpetrators prior to the shooting, and that McDowell possibly had a connection to a man who previously shot Harrison. [*Id.*]. Smithers believes that unsealing the requested documents may allow investigation of the "truthfulness" of McDowell's statements regarding the Harrison shooting, reveal potential "government-conferred benefits," and otherwise "impeach his credibility." [DE 335 at 1764].

In support of his motion, Smithers asserts the documents should be unsealed because (1) the public record is "devoid of information" demonstrating a compelling interest to seal the documents and (2) the General Order is "facially invalid" because it eliminates a requirement to state specific findings for sealing a document on the record. [DE 336 at 1765, 1766]. The Court addresses each in turn.

## II.   Analysis

As a preliminary matter, Smithers mistakenly mischaracterizes Docket Entry 185. [DE 336 at 1761 (moving to unseal "sentencing order [RE 185]")]. To clarify, the "sentencing order" that Smithers refers to is neither a "sentencing order" nor a sealed document. [DE 185]. Rather, it is a statistical entry document for the Administrative Office of the Courts and is therefore a non-public record. The closest match to a "sentencing order" in the docket is the Judgment

and Commitment Order. [DE 188]. This document is public, unsealed, and freely available to Smithers. Because Docket Entry 185 has been mistakenly identified as a sealed document, the Court will not consider Smithers' arguments to "unseal" it. But the statement of reason, [DE 189], and plea supplement, [DE 190], were filed under seal, so the Court will consider each of Smithers' arguments with respect to those documents only.

### A. Standing

Before reaching the merits of Smithers' arguments, the Court must determine whether he has standing to intervene. To have standing, Smithers must have "suffered an injury in fact that is fairly traceable" to the cause of the injury and is "likely redressable by a favorable decision." *Grae v. Corrs. Corp. of Am.*, 57 F.4th 567, 569 (6th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Smithers' "injury in fact" must also be "concrete and particularized." *Id.* (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)).

Smithers alleges an informational injury, which can be "sufficiently concrete," *Fed. Elec. Comm'n v. Akins*, 524 U.S. 11, 12 (1998), if the information he was denied "must be publicly disclosed pursuant to a statute." *Id.* at 21; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016); *Pub. Citizen v. Dep't of Just.*, 491 U.S. 440, 449 (1989); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982). Circuit courts have also held the concreteness requirement for an informational injury is met if the there exists a constitutional or common law right of access to the information. *See e.g.*, *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 337 n.6 (7th Cir. 2019); *Carlson v. United States*, 837 F.3d 753, 758 (7th Cir. 2016) ("Injury-in-fact can arise from a comparable common-law source." (citations omitted)); *United States v. Valenti*, 987 F.2d 708, 711–12 (11th Cir. 1993) (noting the Intervenor's "standing to intervene for purposes of challenging its denial of access to the underlying litigation" and explaining that such denial was "in violation

of the Constitution and the common law."). Therefore, Smithers can demonstrate an "informational injury" if he can show he was denied information that he has a "legal right" to access by virtue of a statute, the Constitution, or the common law. *See, e.g.*, *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 269–72 (1st Cir. 2022) (citation omitted).

Smithers first argues that, as a member of the public, he has a First Amendment right to access plea agreements in a criminal case. [DE 336 at 1765]. It is true that "the public and the press enjoy a right of access to criminal trials." *In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573, 577 (1980)). And as Smithers points out, the Sixth Circuit has held that "plea agreements are the quintessential judicial record, entitled to the protection of the First Amendment right to public access of judicial records." *United States v. DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016). Accordingly, the Court agrees that Smithers has a First Amendment right to access McDowell's plea supplement and statement of reason that is "sufficiently concrete."

But that is not the end of the standing inquiry. In 2021, the Supreme Court held that a legal right to access information, by itself, is insufficient to confer standing. *TransUnion*, 141 S. Ct. at 2214. Instead, Smithers must also demonstrate a "downstream consequence" caused by the denial of access to the sealed documents. *Id.* (citation omitted). *See Grae*, 57 F.4th at 570 ("Since *TransUnion*, the courts of appeals have consistently recognized that, to have standing, a plaintiff claiming an informational injury must have suffered adverse effects from the denial of access to information."); *see also Kelly v. RealPage Inc.*, 47 F.4th 202, 213 (3rd Cir. 2022) (collecting cases).

There is limited case law interpreting what constitutes a "downstream consequence" of an informational injury under *TransUnion*.[2] The Second Circuit has required a plaintiff to "show that he has an 'interest in using the information . . . beyond bringing his lawsuit.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *Laufler v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022). Similarly, the Fifth Circuit has recognized that a plaintiff sufficiently alleges a downstream consequence when he "need[s] the [sealed] information in order to participate directly and actively in . . . the electoral and judicial selection process." *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 938 (5th Cir. 2022) (citing *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 1004 (11th Cir. 2020)).

Smithers does not directly discuss the downstream consequence requirement. [*See* DE 336]. But he does assert that he has been harmed because the sealing of the documents impedes his ability to "investigate the truthfulness" of McDowell's statements, and to "uncover evidence" to impeach McDowell as a witness. [*Id.* at 1764]. This satisfies the threshold articulated by the Second Circuit because his interest in the sealed documents extends beyond this matter to the Jefferson County Circuit Court, where he is a criminal defendant. Smithers also appears to satisfy the Fifth Circuit's interpretation, which suggests that a downstream consequence includes the inability to use the sealed information for a distinct, civic purpose. For those reasons, the Court concludes that Smithers' loss of information for his criminal defense in a separate proceeding is an adequate downstream consequence to confer standing. That Smithers has standing is further demonstrated by pre-*TransUnion* case law where circuit courts have frequently found a concrete

---

[2] While *TransUnion* alters the standing analysis, courts have not regarded *TransUnion* as a "sea change to [the Supreme Court's] informational injury jurisprudence," but rather a "reiterat[ion of] the lessons of its prior cases." *Kelly*, 47 F.4th at 214 (citing *TransUnion*, 141 S. Ct. at 2214); *see also Grae*, 57 F.4th at 570; *Weiner v. Ocwen Fin. Corp.*, 343 F.R.D. 628, 632 (E.D. Cal. 2023) ("*TransUnion* was not a sea[ ]change.").

injury when plaintiffs were denied information that they intended to use in a separate judicial proceeding,[3] as well as precedent affirming a third party's standing to intervene to unseal documents in a criminal case based on a First Amendment right of access.[4]

For the reasons set forth, the Court concludes that Smithers has demonstrated a downstream consequence. His inability to access the sealed plea supplement and statement of reason for the purpose of his criminal defense, which he has a First Amendment right to view, satisfies *TransUnion*'s standard. Thus, Smithers has standing to intervene in this matter.

### B. First Amendment Right of Access

Smithers raises two main arguments. First, Smithers asserts that his First Amendment right of access is sufficient to warrant unsealing the plea supplement and statement of reason. [DE 336 at 1765]. He cites the Sixth Circuit's decision in *DeJournett*, [DE 336 at 1765], which explained that "[t]he public may be prevented from accessing plea agreements only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." 817 F.3d 479, 485 (quotations omitted). Smithers argues that the "public record is devoid" of justification for sealing the plea supplement and statement of reason, and so the measure is not narrowly tailored to meet the standard in *DeJournett*. [DE 336 at 1765]. The

---

[3] *See, e.g.*, *United States v. Pickard*, 733 F.3d 1297, 1300 (10th Cir. 2013) (holding that inability to use information in sealed documents "as exhibits in ongoing litigation under the Freedom of Information Act" was sufficient to confer standing); *see also Rosenfeld v. Montgomery Cnty. Pub. Sch.*, 25 F. App'x 123, 131 (4th Cir. 2001) (concluding that plaintiffs had standing to move to unseal educational records for use in civil litigation because the court "s[aw] no reason why the standing of a news organization to seek review of a district court's sealing order should" be broader than that of individual plaintiffs).
[4] *See, e.g.*, *Carlson*, 837 F.3d at 757–58 ("As a member of the public, Carlson has standing to assert his claim to the [sealed] grand-jury transcripts, because they are public records to which the public may seek access, even if that effort is ultimately unsuccessful (perhaps because of sealing, national security concerns, or other reasons)."); *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (holding "that a motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper") (citation omitted); *United States v. Bas*, No. JKB-16-0324, 2022 WL 1270841, at *1 (D. Md. Apr. 28, 2022) ("Other circuits have similarly affirmed the propriety of 'a motion of intervene to assert the public's First Amendment right of access to criminal proceeding[s].'" (collecting cases)).

Court disagrees. Sealing the plea supplement and statement of reason, consistent with the General Order, is "narrowly tailored" because "protecting cooperating inmates serves a compelling interest under the First Amendment," *United States v. Doe*, 962 F.3d 139, 148 (4th Cir. 2020), and is therefore "essential to preserve higher values." *DeJournett*, 817 F.3d at 484 (quoting *Press-Enterprises, Co. v. Superior Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984)).

The General Order protects the safety of cooperators and their families from potential wrongdoers who would use an unsealed plea supplement to identify and harm them. *See United States v. Harris*, 890 F.3d 480, 492 (4th Cir. 2018) (explaining that "the need to protect the well-being of a criminal defendant's family members (and the defendant himself) is even more elevated if judicial records suggest that the defendant may have cooperated with law enforcement"). As the Fourth Circuit has recognized, the Committee on Court Administration and Case Management of the Judicial Conference of the United States' 2016 report ("CACM Report") finds that electronic access to case dockets has indeed led to the identification of cooperators. *See United States v. Doe*, 962 F.3d 139, 150 (4th Cir. 2020) (taking judicial notice of the CACM Report). In *Doe*, the Fourth Circuit was persuaded by the CASM Report's harrowing data that "action was necessary and justified" to prevent the harms described in the report. *Id.* (discussing the report's "alarming" finding that "district judge [survey] respondents reported 571 instances of harms or threats— physical or economic—to defendants and witnesses between the spring of 2012 and the spring of 2015, including 31 murders of defendant cooperators"). Preventing this type of harm is precisely the "compelling interest" that the General Order protects. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[T]he right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."). Just as the Fourth Circuit held

regarding the Standing Order in *Doe*, the Court concludes that the General Order serves a compelling interest here. 962 F.3d at 151.

Sealing the plea supplement and statement of reason is also a narrowly tailored method of protecting the safety of cooperators and their families. Smithers has not explained why the General Order is not narrowly tailored, nor has he offered an alternative that accomplishes the same purpose. [*See* DE 336 at 6]. In *Doe*, the Fourth Circuit considered the alternatives of performing a case-by-case analysis or implementing a redaction policy, concluding that both were inadequate. *See id.* at 152. A case-by-case basis would be costly to litigate in every individual case, *Id.*, and the discrepancy between some cases resulting in seals while others remained unsealed would destroy the anonymity of cooperators. The same is true for a redaction policy, where "[c]ommon sense confirms" that a cooperating defendant would be exposed "because redacting the order would merely flag the filings in their case." *Id.* (quotations omitted). In other words, the resulting discrepancy in seals and redactions would be akin to labeling them "cooperating" or "non-cooperating." The General Order can only protect the anonymity of cooperating defendants through the unanimity of sealing *all* defendants' plea supplements. Thus, the General Order is narrowly tailored to achieve this compelling interest.

### C. Constitutionality of the General Order

Finally, Smithers argues that the General Order is "facially invalid," [DE 336 at 1766], because it "eliminates the requirement" for the Court to make "specific findings and conclusions [that] justify nondisclosure to the public." [*Id.* (quoting *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016))]. As persuasive authority, Smithers cites a Tenth Circuit opinion holding that blanket policies of sealing all plea supplements irrespective of their content are insufficient to keep a document under seal. [*Id.* (citing *United*

8

*States v. Bacon*, 950 F.3d 1286, 1293 (10th Cir. 2022))]. The Court disagrees and declines to follow the Tenth Circuit approach because providing specific findings for sealing each plea supplement and corresponding statement of reason would defeat the purpose of the General Order.

As the Court has already discussed, the General Order protects the identity of cooperating defendants by sealing *all* plea supplements and statements of reason, "irrespective of their content." [DE 336 at 1766]. The uniform sealing of all plea supplements is necessary because it is the least restrictive means of anonymizing who cooperates and who does not, whereas a case-by-case analysis or a redaction policy would reveal that information. It is for these same reasons that the Court's on-the-record reasoning for sealing the plea supplement and statement of reason is limited to its compliance with the General Order—saying more would necessarily reveal whether a defendant cooperated, thwarting the central purpose of the General Order.[5]

In any event, Smithers' argument that "failure to set forth those reasons . . . is itself grounds to vacate an order to seal," [*Id.* (quoting *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 306 (6th Cir. 2016)], does not account for the objective of that requirement. The purpose of stating specific findings for sealing a document on the record is to enable "a reviewing court [to] determine whether the [sealing] order was properly entered[.]" *Press-Enterprises, Co.*, 464 U.S. at 510. The General Order does not frustrate that purpose, as the Sixth Circuit would have access to both the plea supplement and statement of reason in the event of an appeal of a sealing order from this District. The General Order also sets out its own justification.[6] Accordingly, the

---

[5] Perhaps recognizing the efficacy of such a policy, "[a]s of June 2016, more than one-third of federal district courts had 'adopted local rules or standing orders to make all criminal defendants appear identical in the record to obscure cooperation information.'" *Doe*, 962 U.S. at 150 (citing CACM Report at 3 n.3).
[6] General Order 2010-06, *supra* note 1 ("Because a plea agreement may contain information regarding cooperation and because such documents are available on the internet by way of PACER, the Court has decided to restructure its practice to make each case appear identical.").

Court rejects the Tenth Circuit approach advocated by Smithers and holds that the General Order is not unconstitutional.

### III.   Conclusion

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is

**ORDERED** that Michael Smithers' motion to intervene for the limited purpose of unsealing the sentencing order, statement of reason, and plea agreement supplement, [DE 336], is **DENIED**.

Rebecca Grady Jennings, District Judge
United States District Court

September 11, 2023